INHABITANTS OF ATKINSON *vs.* INHABITANTS OF ORNEVILLE.

Piscataquis.    Opinion March 20, 1902.

*Pauper. Practice. Evidence. Declarations.*

When exceptions are taken to the admission of evidence, in the absence of any exception to the charge, it is presumed that full and correct instructions were given to the jury.

The books of a collector of taxes upon which were marks of "paid" in his hand writing opposite the name and the tax for certain years, including 1884, of one subsequently a pauper, have no probative force to show that in the fall of that year the pauper did not move away from the town in which he was taxed, when it is admitted that he was living there at the date of the assessment.

When all the declarations accompanying the act have been admitted in evidence, exceptions will not be sustained to the exclusion of declarations of one claimed to have changed his residence and whose pauper settlement is later in dispute, made during a conversation held a few days prior to the alleged move.

Where there is evidence to support a verdict and there is nothing in the case which would justify the substitution of the judgment of the court, who did not see the witnesses, for that of the jury who did, and the parties have had a fair trial without prejudicial error in law, the verdict will not be disturbed.

Exceptions and motion by defendant.　Overruled.

Assumpsit for pauper supplies, furnished by the overseers of the poor of Atkinson to one Charles R. Ayer.

The opinion states the case.

*Henry Hudson and W. A. Burgess*, for plaintiff.

*J. B. Peakes and E. C. Smith*, for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

WHITEHOUSE, J.　The question submitted to the jury was whether Charles Ayer, in November, 1899, continued to hold his derivative pauper settlement in the plaintiff town of Atkinson, or whether he had acquired a settlement in his own right in the defendant town of Orneville, by having his home in that town from December, 1882, to October, 1888, more than five successive years, without receiving supplies as a pauper. The jury sustained the latter contention and returned a verdict in favor of the plaintiff. The case comes to this court on exceptions and motion to set aside the verdict as against evidence.

I.　The exceptions.　It was contended in behalf of the defendants that the pauper's residence in Orneville was interrupted in 1883, by his removal to Milo in the summer of that year, and having his home with his father for a few months in that town, and again in 1884, by having his home for a few months in the autumn of that year in a "little shack or shanty" near Heald's Mills in the town of Lagrange. The books of the collector of taxes of Orneville for the years 1883-4-6-7 and 8 were received in evidence for the purpose of showing that the taxes assessed against the pauper in those years were in fact paid by him. The collector had deceased, and the books were admitted upon the testimony of his son identifying the books, and his father's handwriting in the entries in blue pencil opposite the name of Charles Ayer, showing that the tax for each of the years above named was marked "paid." The defendants excepted "to the admission of the collector's books and to the testimony of the son in relation to them."

But the learned counsel for the defendants very properly argues that evidence of the payment by Charles Ayer of a tax assessed against him April 1, 1884, has no "probative force to show that he did not move away into the town of Lagrange in the fall of that year." See *Monroe* v. *Hampden*, 95 Maine, 111, and cases cited. He expressly admits that Ayer lived in Orneville in the spring of 1884, but contends that he moved into Lagrange in the autumn. Neither was there any controversy that Ayer lived in Orneville on the first day of April, 1883. In the absence of any exception to the charge it is presumed that full and correct instructions were given to the jury with reference to the legitimate tendency of the collector's books as evidence in the case. It appears that this was only to establish propositions that were freely admitted by the defendants. Assuming, therefore, without deciding, that the collector's books with the pencil marks of "paid" against the name of Charles Ayer, were not legally admissible as evidence, the defendants cannot be considered aggrieved by their admission.

The defendants' second bill of exceptions is as follows: "It was in evidence that some time in 1883 Charles Ayer packed up his goods in the town of Orneville where he was then living, and moved somewhere and said he was going to Milo to live and take care of his father. The defendants undertook to show that a few days before Charles moved away, his father, who lived in Milo, came to see him, and the defendants offered to show the conversation between Charles and his father at that time as to moving away to Milo, but the court excluded it because it did not accompany some act, an act of preparation to leave town or while returning.

"It was in evidence that a few days after the conversation with his father, Charles packed up, moved from the house in Orneville and said he was going to Milo."

This bill of exceptions also utterly fails to show that the defendants were aggrieved by the ruling excepted to.

It is a familiar principle that "when an act is admissible in evidence as indicating an intention, declarations accompanying and explanatory of that act are also admissible." *Deer Isle* v. *Winterport*, 87 Maine, 37, and cases cited. But it appears from this bill of exceptions that

all such declarations accompanying any act in this case were admitted. The alleged conversation between Charles and his father did not accompany any act, and there is no suggestion in the exceptions that it tended to establish a definite contract under which he was to live with his father in Milo. It is represented to be a conversation "as to moving away to Milo." The exceptions do not bring the case within the principle of *Ripley* v. *Hebron*, 60 Maine, 379. · It does not affirmatively appear that the defendants were aggrieved by the exclusion of this evidence.

II. The motion. The burden was undoubtedly on the plaintiffs who set up five years' continuous residence of the pauper in the defendant town, to establish that proposition by a preponderance of the evidence. *Monroe* v. *Hampden*, 95 Maine, 111; *Ripley* v. *Hebron*, 60 Maine, 379.

After a careful reading and comparison of all the evidence in the case and a review of the arguments of counsel, it is the opinion of the court that there is a preponderance of evidence tending to show that, notwithstanding an apparent change of dwelling-place in 1883, the legal home of Charles Ayer remained in Orneville during that year.

But more difficulty is experienced in regard to the defendants' second proposition that there was a removal to the town of Lagrange in the fall of 1884. Upon this branch of the case the testimony was sharply conflicting. The report discloses strong and apparently reliable testimony that Charles Ayer removed to Heald's Mills in Lagrange in October or November, 1884, with his family and household goods, and occupied a small "shanty" there, owned by Thomas S. Heald, as a dwelling-place for six weeks or two months in the fall of that year.

On the other hand, Thomas S. Heald, who owned and operated the mills there, testifies that he owned the "shanty" alleged to have been occupied by Ayer, and that it was occupied throughout that season by another man, and that Ayer never worked for him, never had permission to occupy the "shanty" and never did occupy it to his knowledge. This was corroborated by other testimony tending to show that Ayer did not dwell in Lagrange, but did live in Orneville during that season.

Here was a plain issue of fact which the jury were fully qualified to understand and appreciate. Under the appropriate instructions which were presumably given them, they could not fail to apprehend the proper relation of the evidence to that issue. They had the advantage afforded by an inspection of the manner and bearing of the witnesses. Able and experienced counsel were there to see that nothing was overlooked or forgotten. It is possible, but by no means certain, that the court would have reached a conclusion different from that reported by the jury. But there was evidence sufficient to support the verdict, and there is nothing in the case which would justify the substitution of the judgment of the court, who did not see the witnesses, for the judgment of the jury who did. The parties had a fair trial without prejudicial error in law, and must abide the result.

*Motion and exceptions overruled. Judgment on the verdict.*